**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAUSE OF ACTION INSTITUTE<br>1875 Eye Street, NW<br>Suite 800<br>Washington, DC 20006,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201,<br><br>CENTERS FOR MEDICARE & MEDICAID SERVICES<br>7500 Security Boulevard<br>Baltimore, Maryland 21244-1850<br><br>Defendants. | ) | Civil Action No. 17-444 |

## COMPLAINT

1. Plaintiff Cause of Action Institute ("CoA Institute") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking access to records maintained by Defendants United States Department of Health and Human Services ("HHS") and its subsidiary agency, the Centers for Medicare and Medicaid Services ("CMS"). The requested records concern HHS obligations to taxpayers under the Affordable Care Act ("ACA") transitional reinsurance program, CMS funding of the ACA risk corridors program, and CMS misuse of taxpayer information to market the ACA. Defendants have failed to issue a final determination on or produce any records responsive to CoA Institute's FOIA requests within the applicable

FOIA time limits. In doing so, Defendants have withheld records to which CoA Institute has a right and that serve the public interest in transparent and accountable government.

**NATURE OF THE ACTION**

2. Defendants HHS and CMS are federal agencies tasked with implementing the ACA, which has been mired in controversy and faced multiple legal challenges since its enactment. *See, e.g., King v. Burwell*, 135 S.Ct. 2480 (2015); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014); *Nat'l Fed'n of Indep. Bus. v. Seblius*, 567 U.S. 519 (2012). The FOIA requests that are the subject of this Complaint seek records relating to three specific areas of controversy in the ACA's implementation.

**A. HHS Obligations to Taxpayers Under the Transitional Reinsurance Program**

3. Section 1341 of the ACA created the "transitional reinsurance program for individual market for each State." 42 U.S.C. § 18061. Under the transitional reinsurance program, from 2014 to 2016, HHS was obligated to collect reinsurance contributions totaling $20 billion from health insurance providers and third party administrators of group health plans. *Id.* § 18061(b)(3)(B)(iii). HHS was supposed to use those contributions to make payments to health insurers who enrolled high-risk individuals. *Id.* § 18061(b)(4); *see also* Memorandum from Paulette C. Morgan & Edward C. Liu, Cong. Research Serv., to the H. Comm. on Ways & Means and H. Comm. on Energy & Commerce, Information on the ACA Transitional Reinsurance Program 3 (Feb. 23, 2016) ("Congressional Research Memo"), *available at* http://bit.ly/2lrBirL.

4. Over the same three-year period, the ACA also obligated HHS to collect an additional amount, totaling $5 billion, 42 U.S.C. § 18061(b)(3)(B)(iv), which was to be

deposited directly to the U.S. Treasury. 42 U.S.C. § 18061(b)(4); Congressional Research Memo at 3.

5. For the 2014 benefit year, HHS failed to collect the total amount of contributions required by §§ 18061(b)(3)(B)(iii) & (iv) for the reinsurance program and contribution to the Treasury, collecting only $9.7 billion out of the $12 billion specified by the ACA ($10 billion for reinsurance and $2 billion for deposit to the Treasury). *See* Ctrs. for Medicare & Medicaid Servs., Memorandum: The Transitional Reinsurance Program's Contribution Collections for the 2014 Benefit Year (Apr. 14, 2015), *available at* http://go.cms.gov/2mj4Yst. HHS then allocated the entire $9.7 billion to the reinsurance program and $0 to the Treasury, even though the $9.7 billion collection exceeded by approximately $1.7 billion the $7.9 billion in reinsurance payments actually requested by insurers. Instead of depositing the $1.7 billion surplus into the Treasury to partially satisfy the $2 billion contribution required under § 18061(b)(3)(B)(iv), HHS rolled over these contributions into the 2015 reinsurance program, leaving the mandatory $2 billion Treasury contribution completely unsatisfied. *See* Ctrs. for Medicare & Medicaid Servs., Summary Report on Transitional Reinsurance Payments & Permanent Risk Adjustment Transfers for the 2015 Benefit Year 9, at 9 n.11 (June 30, 2016), *available at* http://go.cms.gov/29vG3LP.

6. This action was taken notwithstanding express provisions of the ACA to the contrary. According to the Congressional Research Service, any interpretation of the ACA that would allow "the entire contribution of an issuer in any given year to be used only for reinsurance payments, such that no part of it is allocated for the U.S. Treasury contribution, . . . would appear to be in conflict with a plain reading of § 1341(b)(4)." Congressional Research Memo at 8.

7. The CoA Institute FOIA request on this issue seeks information from the HHS concerning the prioritization of payments to health insurers over payments to the Treasury.

**B. <u>CMS Funding of the Risk Corridors Program</u>**

8. Under the ACA, the risk corridors program was supposed to collect payments from insurers with lower than expected losses and redirect the money to insurers with higher than expected losses. *See* 42 U.S.C. § 18062. Because of low enrollment and monetary shortfalls, a CMS memorandum entitled "Risk Corridors Payments for 2015" announced that funding for the risk corridors program would not be available to insurers in 2015. *See* Ctrs. for Medicare & Medicaid Servs., Memorandum: Risk Corridors Payments for 2015 (Sept. 9, 2016), *available at* http://go.cms.gov/2cPXLzl. The memorandum, however, appears to invite insurers to sue CMS and then settle with the Department of Justice ("DOJ") to obtain funding, which would constitute an end-run around a provision enacted by Congress in 2014 to prevent shifting funds into the risk corridors program and a violation of DOJ guidance regarding "backdoor bailouts." *See, e.g.*, Peter Sullivan, *Official Hints at Settlement Talks with Obamacare Insurers,* The Hill, Sept. 14, 2016, http://bit.ly/2depzcN; Appropriate Source for Payment of Judgments and Settlements in *U.S. v. Winstar Corp.*, 22 Op. O.L.C. 141, 143 (1998), *available at* http://bit.ly/2lhedaC.

9. Obtaining risk corridor funding through the DOJ Judgment Fund would be an illegal misuse of appropriations. The CoA Institute FOIA request on this issue seeks information relating to the CMS memorandum and the lack of funding for risk corridor payments.

**C. <u>Misuse of Taxpayer Information to Market the ACA to Young Adults</u>**

10. In an apparent effort to boost enrollment in ACA programs, the Obama Administration adopted a plan to market the ACA to individuals who declined coverage by using information obtained from individual tax returns. A fact sheet released by CMS in June 2016

entitled "Strengthening the Marketplace by Covering Young Adults," highlighted CMS's plan to boost ACA enrollment by using taxpayer information, stating "[f]or the first time this Open Enrollment, CMS will partner with IRS to conduct outreach to families that paid the fee or claimed an exemption for 2015." Fact Sheet, Ctrs. for Medicare & Medicaid Servs., Strengthening the Marketplace by Covering Young Adults (June 21, 2016), *available at* http://go.cms.gov/28NgIi3.

11. Information as to who paid the ACA fee for being uninsured, or who claimed an exemption from that fee, for 2015 was collected by the IRS on individual tax returns. Under the ACA, however, tax information may only be used to determine ACA subsidy eligibility; it may not be used to market the ACA to individuals who have already declined to enroll. *See* 26 U.S.C. § 6103(l)(21)(C).

12. It is not clear how CMS or HHS could have secured confidential taxpayer information concerning who paid the ACA fee or who claimed an exemption. The CoA Institute FOIA request on this issue seeks information relating to CMS use of such confidential taxpayer information for its direct marketing campaign.

13. To date, Defendants have not issued a final determination on or produced any records in response to the CoA Institute FOIA requests that are the subject of this Complaint. The failure to issue a timely determination on the FOIA requests at issue violates CoA Institute's rights under the FOIA.

## JURISDICTION AND VENUE

14. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

15. Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

16. CoA Institute is a non-profit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair. In carrying out its mission, CoA Institute uses various investigative and legal tools to educate the public about the importance of government transparency and accountability. CoA Institute regularly requests access under FOIA to the public records of federal agencies, entities, and offices, and disseminates its findings, analysis, and commentary to the general public.

17. HHS is an agency within the meaning of 5 U.S.C. § 552(f)(1) and has possession, custody, and control of records to which CoA Institute seeks access and which are the subject of this Complaint.

18. CMS is an agency within the meaning of 5 U.S.C. § 552(f)(1) and has possession, custody, and control of records to which CoA Institute seeks access and which are the subject of this Complaint.

## FACTS

### A. The August 26, 2016 FOIA Request

19. By letter, dated August 26, 2016, CoA Institute submitted a FOIA request to HHS seeking certain records related to HHS's "decision to shift money to pay off insurers before taxpayers." Ex. 1 at 1. The time period for the request was "January 1, 2015 to the present." Ex. 1 at 2.

20. CoA Institute also requested a public interest fee waiver and classification as a representative of the news media for fee purposes. Ex. 1 at 3.

21. By telephone, on September 16, 2016, CoA Institute requested an update from HHS relating to the August 26, 2016 FOIA request. During the call, the FOIA officer stated that the agency inadvertently failed to log the August 26, 2016 FOIA request.

22. By letter, dated September 16, 2016, HHS acknowledged receipt of the FOIA request and assigned it case number 2016-00951-FOIA-OS. Ex. 2. The agency did not address the CoA Institute fee category requests in its acknowledgement letter.

23. The HHS acknowledgement letter asserted that if "unusual and exceptional circumstances" prevented production of records within 20 working days, the agency would unilaterally "utilize a 10 working day extension" to process the request. Ex. 2 at 1.

24. By telephone, on October 11, 2016, CoA Institute left a voicemail with HHS requesting an update on the status of the August 26, 2016 FOIA request. That voicemail was not returned.

25. By telephone, on December 15, 2016, CoA Institute left another voicemail with HHS requesting an update on the status of the August 26, 2016 FOIA request. That voicemail also was not returned.

26. To date, CoA Institute has received no further communication from HHS concerning the August 26, 2016 FOIA request.

**B. <u>The September 22, 2016 FOIA Request</u>**

27. By letter, dated September 22, 2016, CoA Institute submitted a FOIA request to CMS seeking certain records related to "the Obama Administration's apparent attempt to bailout insurers through judicial settlements in order to compensate for short falls in the risk corridors program." Ex. 3 at 1. The time period for the request was "January 1, 2015 to the present." Ex. 3 at 2.

28. CoA Institute also requested a public interest fee waiver and classification as a representative of the news media for fee purposes. Ex. 3 at 3.

29. By telephone, on October 11, 2016, CoA Institute left a voicemail with CMS requesting a status update with respect to the September 22, 2016 FOIA request. That voicemail was not returned.

30. By letter, dated October 17, 2016, CMS finally acknowledged receipt of the September 22, 2016 FOIA request and assigned the request control number 092320167031. Ex 4. CMS indicated that it had begun a search for responsive records and that CoA Institute would be notified regarding the release or non-release of those records. Ex. 4.

31. This same letter granted the CoA Institute request for a public interest fee waiver. Ex. 4. The agency, however, did not issue a determination on the CoA Institute request for categorization as a representative of the news media for fee purposes.

32. By telephone, on December 15, 2016, CoA Institute left a voicemail with CMS requesting an update on the status of the September 22, 2016 FOIA request. That voicemail was never returned.

33. To date, CoA Institute has received no further communication from CMS concerning the September 22, 2016 FOIA request.

**C. The November 7, 2016 FOIA Request**

34. By letter, dated November 7, 2016, CoA Institute submitted a FOIA request to CMS seeking certain records related to CMS's "role in using taxpayer information to market ACA health insurance plans to individuals who have opted out of the program." Ex. 5 at 1. The time period for the request was "January 1, 2015 to the present." Ex. 5 at 2.

35. CoA Institute also requested a public interest fee waiver and classification as a representative of the news media for fee purposes. Ex. 5 at 2-3.

36. By letter, dated November 9, 2016, CMS acknowledged receipt of the November 7, 2016 FOIA request and assigned the request control number 110720167029. Ex. 6.

37. This same letter granted the CoA Institute request for a public interest fee waiver. *Id.* The agency, however, did not issue a determination on the CoA Institute request for categorization as a representative of the news media for fee purposes.

38. By telephone, on December 15, 2016, CoA Institute left a voicemail with CMS requesting a status update with respect to the November 7, 2016 FOIA request. That voicemail was never returned.

39. To date, CoA Institute has received no further communication from CMS concerning the November 7, 2016 FOIA request.

## COUNT 1
## Violation of the FOIA: Failure to Comply with Statutory Deadlines

40. CoA Institute repeats all of the above paragraphs.

41. FOIA requires agencies to respond to requests within twenty (20) business days or, in "unusual circumstances," within thirty (30) business days. 5 U.S.C. §§ 552(a)(6)(A)–(B). If an agency requires additional time, FOIA mandates that the agency provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request[.]" *Id.* § 552(a)(6)(B)(ii).

42. Defendants have failed to issue a final determination on or produce any records responsive to any of CoA Institute requests within the applicable FOIA time limits.

43. Defendants also failed to comply with FOIA in that they never provided CoA Institute "an opportunity to arrange with the agency an alternative time frame for processing" the FOIA requests. None of Defendants' acknowledgement letters or other responses provide an

estimated date of completion or an invitation to contact the agency for the purposes of negotiating an "alternative" response date for any of the requests.

44. CoA Institute has fully exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

**RELIEF REQUESTED**

WHEREFORE, CoA Institute respectfully requests and prays that this Court:

a. order Defendants to process FOIA request Nos. 2016-00951-FOIA-OS, 092320167031 and 110720167029 expeditiously and make a final determination within twenty (20) business days of the date of the Order;

b. order Defendants to produce all responsive records promptly upon issuing its final determinations;

c. award CoA Institute its costs and reasonable attorney fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

d. grant such other relief as the Court may deem just and proper.

Date: March 13, 2017

Respectfully submitted,

*/s/ Lee A. Steven*

Lee A. Steven
D.C. Bar. No. 468543

CAUSE OF ACTION INSTITUTE
1875 Eye Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
lee.steven@causeofaction.org

*Counsel for Plaintiff*